UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                               )
UNITED STATES OF AMERICA       )
                               )
        v.                     )       Cr No. 17-038 WES
                               )
JON CASCELLA                   )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

        Defendant/Movant Jon Cascella has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 ("Mot. to Vacate"), ECF No. 192, in the above-captioned matter.  He has also filed a motion for appointment of counsel ("Mot. for Counsel"), ECF No. 193.  The government has filed an objection to the Motion to Vacate ("Gov't Obj."), ECF No. 198, to which Cascella filed a letter in reply ("Reply"), ECF No. 199.  The Court has determined that no hearing is necessary.  For the following reasons, the Motion to Vacate is DENIED.  The Motion for Counsel is also DENIED.

I.   Background and Travel

        Between March 29, 2017, and May 4, 2017, Cascella sold methamphetamine on six separate occasions to a Warwick, R.I., undercover police detective to whom he had been introduced by a confidential informant ("CI").  United States v. Cascella, 943 F.3d 1, 4-5 (1st Cir. 2019) ("Cascella II").  The May 4, 2017,

transaction also involved a "drugs-for-firearm" trade, assisted by an undercover agent from the Bureau of Alcohol, Tobacco, and Firearms and Explosives ("ATF"). Id. at 5. Cascella was arrested immediately thereafter. Id. A subsequent search of Cascella's home turned up additional methamphetamine and a smoke grenade. Id. Cascella told the arresting officers that he had been selling drugs to four different customers and wanted a gun for protection because he had previously been robbed. Id.

Cascella was indicted by a federal grand jury sitting in the District of Rhode Island on nine counts: four counts of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Counts I-IV); two counts of distribution of five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Counts V-VI); one count of being a felon in possession of a firearm, in violation of 18 U.S. §§ 922(g)(1) and 924(a)(2) (Count VII); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count VIII); and one count of possession with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count IX). Cascella II, 943 F.3d at 5; Mot. to Vacate at 1; Superseding Indictment at 1-3, ECF No. 51. Cascella pled not guilty and went to trial, proceeding pro se with standby counsel, then hybrid

representation.  Cascella II, 943 F.3d at 5; Mot. to Vacate at 14.

He argued that he was "merely a drug user whom [the CI] and [the

undercover detective] entrapped into selling drugs and buying a

firearm."  Cascella II, 943 F.3d at 5. Nonetheless, the jury

convicted him on all counts.  Id.; Am. J. at 1, ECF No. 156.

On April 19, 2018, the Court sentenced Cascella to an

aggregate term of 120 months imprisonment, followed by seven years

of supervised release.  Mot. to Vacate at 1; Transcript of April

19, 2018, Sentencing Hearing Tr. at 49 ("Sent. Hr'g. Tr."), ECF

No. 165; Am. J. at 3-4.  A special assessment of $900 was also

imposed.  Am. J. at 7; Sent. Hr'g. Tr. at 49.  An Amended Judgment

was entered on April 27, 2018.[1]  Am. J. at 1.  Cascella appealed,

but the First Circuit affirmed the convictions.[2]  Cascella II, 943

F.3d at 4, 12; Mot. to Vacate at 2.  The Supreme Court subsequently

denied certiorari.  Cascella v. United States, 140 S. Ct. 2791

(2020) ("Cascella III"); Mot. to Vacate at 2.

---

[1] The Amended Judgment corrected a clerical error in the
original Judgment, ECF No. 150.

[2] After the guilty verdict had entered and Cascella had
noticed his appeal, but before the appeal was decided, Cascella
filed, among other motions, motions for a new trial, ECF Nos. 83,
96, and for acquittal, ECF Nos. 84, 87.  See United States v.
Cascella, Cr. No. 17-38-WES, 2018 WL 10579452, at *1 & n.1
("Cascella I").  The Court denied the motions orally during the
sentencing hearing and in a subsequent written opinion.  Sent.
Hr'g. Tr. at 31; see also Cascella I, 2018 WL 10579452, at *1-2.

On February 23, 2021,[3] Cascella timely filed the instant Motion to Vacate.

II.  Law

A.   Section 2255

Section 2255 provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Generally, the grounds justifying relief under 28 U.S.C. § 2255(a) are limited.  A court may grant relief pursuant to § 2255 in instances where the court finds a lack of jurisdiction, a constitutional error, or a fundamental error of law.  United States v. Addonizio, 442 U.S. 178, 185 (1979).  "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice."  Id. (internal quotation marks

---

[3] The Motion to Vacate was mailed on February 23, 2021, and is deemed filed on that date.  Houston v. Lack, 487 U.S. 266, 276 (1988)(concluding that pleadings are deemed filed on date prisoner relinquishes control over documents).

omitted).   Moreover, § 2255 is not a substitute for direct appeal. Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994).

    B.   Procedural Default

    "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent'" of the crimes for which he was convicted.   Bousley v. United States, 523 U.S. 614, 622 (1998)(internal citations omitted); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991); Murray v. Carrier, 477 U.S. 478, 496 (1986).   "Cause" consists of "some objective factor external to the defense . . . ."   Carrier, 477 U.S. at 488; see also Coleman, 501 U.S. at 753 (noting that the Carrier Court "explained clearly that 'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him").   To demonstrate prejudice, the "habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"   Carrier, 477 U.S. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (alteration in original); see also Derman v. United States, 298 F.3d 34, 45 (1st Cir. 2002)("The showing of prejudice needed

to cure a procedural default generally requires a habeas petitioner to demonstrate that there is a reasonable probability that the result of the trial would have been different absent the error. The question is not whether the petitioner, *qua* defendant, would more likely have received a different verdict had the error not occurred, but whether he received a fair trial, understood as a trial worthy of confidence, notwithstanding the bevue.") (internal citations and quotation marks omitted).  A petitioner must show both cause and prejudice.  <u>Derman</u>, 298 F.3d at 45.

The "actual innocence" standard "requires the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)(citing <u>Carrier</u>, 447 U.S. at 496).  To establish the requisite probability, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." <u>Id.</u>  Moreover, a credible claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." <u>Id.</u> at 324.  "The standard is 'demanding and permits review only in the extraordinary case.'" <u>United States v. Marandola</u>, 372 F. Supp. 3d 7, 11 (D.R.I.

6

2019) (quoting House v. Bell, 547 U.S. 518, 538 (2006)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

III. Motion to Vacate

In his Motion to Vacate, Cascella presents four claims of error for the Court's consideration. First, he alleges that the Court abused its judicial discretion when it sustained the CI's "blanket assertion" of his Fifth Amendment Privilege against self-incrimination. Mot. to Vacate at 5. Next, Cascella argues that the government interfered with his Sixth Amendment rights by questioning and intimidating a defense witness the day before the witness was scheduled to testify, thereby depriving him of a fair trial. Id. at 7. Third, Cascella claims the government committed misconduct by tampering with evidence, specifically his cell phone data. Id. at 10. Lastly, Cascella alleges that his seven years of supervised release constitutes excessive punishment. Id. at 12. The government counters that all of Cascella's claims are procedurally barred, speculative, or both. Gov't Obj. at 1, 5-10.

A. Abuse of Judicial Discretion

Cascella first argues that the Court abused its discretion by sustaining a defense witness's "blanket assertion" of his Fifth Amendment privilege against self-incrimination, "without ever

meeting him and holding a proper Voi [sic] Dire hearing to conduct a particularized inquiry as to each question the defense may wish to explore and pose to . . . the 'CI', their own witness, to assess the validity of his invocation of his claim . . . ."  Mot. to Vacate at 5.  The government responds that Cascella "has already litigated this very claim before the appellate court . . . [and] is barred from pursuing it in the § 2255 context."  Gov't Obj. at 5.  The government is correct.

        As noted above, § 2255 is not a substitute for direct appeal. Knight, 37 F.3d at 772.  Nor is it a forum for re-litigating claims that have already been raised and decided.  United States v. Singleton, 26 F.3d 233, 240 (1st Cir. 1994) ("[I]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." (quoting Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967))); Dirring, 370 F.2d at 864 ("On a motion to vacate sentence (or judgment) we will not re-review grounds for relief previously considered and determined.  As to these grounds, petitioner is not entitled to another review."); United States v. Hatch, CR No. 05-098-WES, 2011 WL 1750706, at *9 (May 9, 2011) ("Hatch raised substantially the same argument on direct appeal, and it was rejected by the First Circuit . . . .  Thus, he is procedurally foreclosed from bringing it here." (citing Singleton, 26 F.3d at 240)).

In his direct appeal, Cascella "challenge[d] the district court's decision allowing the confidential informant . . . to avoid taking the stand at trial based on a blanket assertion of his Fifth Amendment right not to incriminate himself." Cascella II, 943 F.3d at 5. There, as here, Cascella claimed the CI's testimony would support his entrapment defense. Id. at 6; Mot. to Vacate at 5.

The First Circuit stated:

> Reliance on a blanket assertion of privilege that deprives a defendant of his ability to call a relevant witness to testify is extremely disfavored. We have nevertheless at least once allowed such a blanket assertion of privilege when the district court itself confirmed the witness's inability to offer any relevant, non-privileged testimony. And we have also on one occasion sustained a similar decision made after the district court interrogated the witness and determined that any non-privileged testimony would be confusingly disjointed and would not substantially advance an entrapment defense.

Cascella II, 943 F.3d at 5-6 (internal citations and quotation marks omitted). However, a defendant is "not . . . entitled to call the witnesses merely to have them assert their privilege before the jury." United States v. Santiago, 566 F.3d 65, 70 (1st Cir. 2009); see also Cascella I, 2018 WL 10579452, at *2 (noting that Cascella "disregards applicable law when he argues that the Court violated his constitutional rights when it prevented Cascella from calling a witness who planned to invoke his Fifth

Amendment privilege as to all questions relevant to Cascella's defense . . ." and quoting Santiago, 566 F.3d at 70).

Regarding Cascella, the First Circuit continued:

> Here, the district court neither questioned the witness, nor allowed counsel to question the witness, relying instead on the representations of the witness's appointed counsel, whose understandable aim was to keep his client off the stand. Nevertheless, we need not decide whether the handling of the privilege-pleading witness was error. Rather, we agree with the government that even if there was error, it was harmless.

Cascella II, 943 F.3d at 6. The court noted that the trial judge allowed the entrapment defense to go to the jury, although "the entrapment defense was so weak that it need not have gone to the jury, even with the evidence that Cascella claims he might have secured from [the CI]." Id. at 6; see also id. at 8 ("Even viewing Cascella's proposed evidence, as we must, in the light most favorable to the accused so as to determine whether the record supports an entrapment theory, we agree that Cascella's defense was—in the government's words—hopeless. On this record, the district court need not have put the entrapment defense to the jury.") (internal citation and quotation marks omitted). Therefore, the First Circuit concluded, "the failure to allow Cascella a chance to elicit from [the CI] the proffered, possibly non-privileged testimony was harmless beyond a reasonable doubt." Id. at 8.

The First Circuit also noted Cascella's claim that on December 3, 2017, the day before the CI was to testify, "he waived his Fifth [A]mendment right by conversations with the prosecutor." Mot. to Vacate at 5; see also Cascella II, 943 F.3d at 8-9. The court declined to address the argument because it had not been properly preserved in the trial court. Cascella II, 943 F.3d at 8-9.

Cascella has already presented his first claim to the Court of Appeals. Therefore, he is precluded from raising it again in his Motion to Vacate. See Singleton, 26 F.3d at 240; Hatch, 2011 WL 1750706, at *9; see also Barrett v. United States, 965 F.2d 1184, 1190 n.11 (1st Cir. 1992) (noting that issue resolved against petitioner on direct appeal "cannot be collaterally attacked in these proceedings" (citing Muchu v. United States, 926 F.2d 50, 55 (1st Cir. 1991))).

B. Government Witness Interference/Intimidation

Relatedly, Cascella claims that the CI's December 3, 2017, meeting with the Assistant United States Attorney ("AUSA"), an ATF special agent, and two Warwick police detectives was "intimidative," interfered with the defense witness, "distort[ed] the fact-finding process and violated [Cascella's] Sixth Amendment Right to confrontation, compulsory process and the right to present a complete defense . . . ." Mot. to Vacate at 7. Cascella points to the AUSA's "warnings to tell the truth and intimidating presence

of all the law enforcement individuals," id., which "were the cause of the 'CI' . . . pleading the Fifth Amendment privilege against self-incrimination and refusing to testify," id.  The government argues that Cascella has procedurally defaulted the claim and that, in any event, it is based on speculation.  Gov't Obj. at 7-8.

First, as noted above, Cascella raised the matter of the CI's meeting with law enforcement the day before his scheduled testimony before the First Circuit.  Cascella II, 943 F.3d at 8-9.  The court did not address the issue because Cascella had not preserved it in the district court.  See id. (noting that the argument had not been properly preserved and, in addition, that Cascella raised the argument for the first time in a reply brief).  Arguably, then, the claim has been raised and rejected on procedural grounds.

With respect to Cascella's failure to preserve the issue, he has procedurally defaulted the claim.  See Derman, 298 F.3d at 44 (noting general rule that "a criminal defendant must seasonably advance an objection to a potential constitutional infirmity in order to preserve the point for collateral attack" and stating that "[t]he inquiry into the applicability of the procedural default rule is, for the most part, black or white: either the defendant proffered a timely objection or he did not").  Nor has Cascella demonstrated cause and prejudice for his procedural default of the claim, or that he is actually, factually innocent

of the crimes for which he was convicted.  See Bousley, 523 U.S. at 622; Derman, 298 F.3d at 45.

That said, as before, Cascella provides nothing beyond his own speculation that the AUSA's comments and the "intimidative atmosphere," Mot. to Vacate at 7, caused the CI to invoke his Fifth Amendment privilege, see id.; see also Santiago, 566 F.3d at 71 (noting that petitioner's "brief does not even begin to show that [the privilege-asserting witness] had *specific* pieces of unprivileged information that would have substantially helped the entrapment defense").  Thus, even assuming Cascella's second argument is properly before this Court, it lacks merit.

C.  Government Misconduct/Brady Violation

In his third claim, Cascella alleges that the government committed misconduct, specifically "tampering with evidence by deleting and/or altering [his] cell phone data."  Mot. to Vacate at 9-10.  Cascella states that an ATF agent had Cascella's cell phone in his possession for eight days before turning it over to a different ATF special agent to conduct a forensic examination. Id. at 10.  According to Cascella, the latter agent testified that "the person who had possession of the cellphone, prior to his receiving it to conduct the extraction, would have been able to manipulate the resident data in the cellphone, and could have deleted the data."  Id.  From this testimony, Cascella concludes

13

that the agent "had the opportunity to delete specific data which
could have been exculpatory and helped advance the defense," id.,
that the record supports his claim that "[b]y the Government
tampering with evidence, they committed a Brady[4]
violation . . . ," id., and that, as a result, he was deprived of
a fair trial, id.

Once again, Cascella has already litigated this claim—twice,
in fact. In this Court, in his motions for new trial, Cascella
argued that:

> [T]he government withheld information in violation of
> Brady v. State of Maryland. He points to cellphone
> records provided him by the government that showed the
> time at which Cascella's phone received calls and text
> messages, but not the substance of the correspondence.
> Cascella insists that the records reveal a gap of thirty
> hours, during which there are no documented calls or
> text messages and that this gap resulted from the
> government withholding evidence or deleting this portion
> of the record before it was disclosed.

Cascella I, 2018 WL 10579452, at *1 (internal citations omitted).
On direct appeal to the First Circuit, Cascella claimed that "the
government did not provide [him] with certain telephone records
showing communications he had with the confidential informant and
an undercover officer . . . ." Cascella II, 943 F.3d at 4; see
also id. at 9-10. Both courts found that Cascella had not met the
standard for establishing a Brady violation. See Cascella I, 2018

---

4 Brady v. Maryland, 373 U.S. 83 (1963).

14

WL 10579452, at *1 ("Cascella's Brady-based argument fails because there is no evidence, besides Cascella's say-so, that the government withheld or tampered with evidence.  And even assuming, arguendo, that the government acted according to Cascella's unfounded accusations, he has not shown how filling in the thirty-hour gap creates a 'reasonable probability that . . . the result of the proceeding would have been different.'" (quoting United States v. Del-Valle, 566 F.3d 31, 40 (1st Cir. 2009))) (alteration in original);[5] see also Cascella II, 943 F.3d at 10 ("As we have said before, 'there is no Brady violation compelling a new trial when the belatedly supplied evidence is merely cumulative or impeaching on a collateral issue.'" (quoting United States v. Martinez-Mercado, 919 F.3d 91, 105 (1st Cir. 2019))).

Cascella's Brady claim has been fully litigated on the merits in two courts.  Accordingly, he is precluded from litigating it again in a § 2255 motion.  See Singleton, 26 F.3d at 240; Hatch,

---

[5] In Cascella I, the Court summarized the standard for establishing a Brady violation:

To receive a new trial for a Brady violation, "the defendant must establish that: (1) the evidence at issue is material and favorable to the accused; (2) the evidence was suppressed by the prosecution; and (3) the defendant was prejudiced by the suppression in that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

2018 WL 10579452, at *1 (quoting Del-Valle, 566 F.3d at 40).

2011 WL 1750706, at *10 ("The claim was also addressed and rejected by the First Circuit and is therefore likewise precluded in this proceeding.").

Even if the claim were properly before the Court, Cascella's own words demonstrate the speculative nature of his argument.  See Mot. to Vacate at 10 (noting ATF special agent's testimony that agent who had prior possession of Cascella's cell phone "**could have** deleted the data") (emphasis added); id. ("This testimony does **suggest** that at the time of trial, he **may have had** the ability to do the physical extraction . . . .") (emphasis added); id. (noting that agent in possession of cell phone "**had the opportunity**" to delete specific data which **could have been** exculpatory and helped advance the defense") (emphasis added); id. (arguing that Court should reverse conviction and order the government to produce his cell phone "for the purpose of conducting another forensic examination **with the hopes of obtaining impeachment material**") (emphasis added); see also Cascella I, 2018 WL 10579452, at *2 (noting there was no evidence beyond Cascella's "say-so" that government withheld or tampered with evidence).

D.  Excessive Punishment

Lastly, Cascella complains that the Court abused its discretion by imposing seven years of supervised release upon completion of his term of imprisonment based on his mental health

issues.  Mot. to Vacate at 12.  In Cascella's view, the Court's
"reasoning for the extra supervised release is an excessive-
punishment . . . ," id., and "patently unreasonable," id.  Such
punishment sentences him "not for [his] crimes of conviction, but
instead for [his] mental health issues, which is not [a] crime .
. . ."  This argument, too, fails.

By statute, the Court is directed to consider certain factors
in sentencing a defendant.  See 18 U.S.C. § 3553(a).  Specifically,
the Court, "in determining the particular sentence to be imposed,
shall consider . . . ," id., among other factors, "the nature and
circumstances of the offense and the history and characteristics
of the defendant," id. § 3553(a)(1), and the need for the sentence
imposed "to provide the defendant with needed educational or
vocational training, medical care, or other correctional treatment
in the most effective manner," id. § 3553(a)(2)(D).  With respect
to supervised release, the Court "in determining whether to include
a term of supervised release, and, if a term of supervised release
is to be included, in determining the length of the term and the
conditions of supervised release, shall consider the factors set
forth in section **3553(a)(1)**, (a)(2)(B), (a)(2)(C), **(a)(2)(D)**,
(a)(4), (a)(5), (a)(6), and (a)(7)."  18 U.S.C. § 3583(c) (emphasis
added).

At the April 19, 2018, sentencing hearing, after determining Cascella's term of imprisonment, the Court stated:

> Now, beyond that, the term of incarceration is the term of supervised release. I'm going to impose a term of supervised release in this case of seven years; four years on Counts One through Six, Count Eight and Count Nine and three years on Count Seven. I'm going to run those terms consecutively for a total of seven years.
>
> The reason I'm going to give you a long term of supervised release is that it's clear to me that the real problem here is your mental illness. And you need treatment. Much of that mental illness is outlined in the evaluation that was done prior to trial which did find that you were competent to stand trial, but also found that you had serious and significant mental health issues. Many of those mental health issues have been on display during the course of trial and today. And you need treatment for both your mental health issues and your addiction issues.

Sent. Hr'g. Tr. at 47-48. The Court further stated that it would recommend to the Bureau of Prisons that Cascella be incarcerated in a facility that would provide him the kind of mental health and substance treatment needed. Id. at 48. In addition, the Court stated that it would require such treatments as a condition of supervised release. Id.

Clearly the Court followed the statutory directive that, in determining the length and conditions of Cascella's supervised release, it take into consideration the factors set forth in § 3553(a)(1), the history and characteristics of the defendant, and 3553(a)(2)(D), the provision of needed medical care. See 18 U.S.C. § 3583(c); id. § 3553(a)(1), (a)(2)(D). The Court did not

18

"punish[]," Mot. to Vacate at 12, Cascella for his mental issues; rather, the Court endeavored to assist Cascella in addressing those issues.

Moreover, the term of supervised release imposed was well within the statutory maximum term for the majority of Cascella's crimes, as the government notes.  Gov't Obj. at 10 (citing United States v. Martinez-Pomales, 625 F. App'x 10, 12 (1st Cir. 2015) (unpublished) (noting that "the 'at least 5 years' language means, we have held, that a defendant committing the qualifying crime can face a life sentence of supervised release")).  In Cascella's case, the "at least" language pertaining to supervised release appears in the penalty provisions of 21 U.S.C. §§ 841(b)(1)(B) (requiring a term of supervised release of "at least 4 years") and 841(b)(1)(C) (requiring a term of supervised release of "at least 3 years") under which he was sentenced.

For these reasons, Cascella's final ground for relief is meritless.

IV.  Motion for Counsel

Cascella seeks the appointment of counsel "to assist [him] in asserting all claims with an attachment of law."  Mot. for Counsel at 1.  The Motion for Counsel is DENIED.

Although the Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal

19

prosecutions, U.S. Const. amend. VI, Cascella does not have a right to counsel in post-conviction matters. See 18 U.S.C. § 3006A(a)(2). Section 3006A(a)(2) provides that a court may appoint counsel for a financially eligible person who is seeking relief under § 2255 when "the interests of justice so require . . . ." Id. Here, Cascella has not demonstrated that the "interests of justice" require the appointment of counsel, and the Court concludes that they do not.

V.   Conclusion

Based on the foregoing, Cascella's Motion to Vacate, ECF No. 192, is DENIED.  His Motion for Counsel, ECF No. 193, is also DENIED.

<u>RULING ON CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts, this Court hereby finds that this case is not appropriate for the issuance of a certificate of appealability (COA) because Cascella failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Cascella is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See Rule 11(a), Rules Governing Section 2255 Proceedings.

IT IS SO ORDERED.

William E. Smith
District Judge
Date: April 29, 2022